IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

FELIPPA PAUL HOLBERT,

      Plaintiff,

                                  **Civil Action 2:19-cv-5553**
                                  **Chief Judge Algenon L. Marbley**
      v.                         **Magistrate Judge Elizabeth P. Deavers**

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Felippa Paul Holbert ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 11), and the administrative record (ECF No. 7). For the following reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I. BACKGROUND

Plaintiff applied for supplemental security income benefits on May 2, 2016, alleging disability beginning January 1, 2016. (R. at 215-222.) Plaintiff's claim was denied initially and upon reconsideration. (R. at 144-146, 155-159.) Upon request, a hearing was held on October 10, 2018, in which Plaintiff appeared and testified. (R. at 34-53.) A vocational expert ("VE"), Michael Eric Roscoe, also appeared and testified at the hearing. (*Id.*) On February 6, 2019,

Administrative Law Judge Ronald Herman ("the ALJ") issued a decision finding that Plaintiff was not disabled. (R. at 12-33.) On October 21, 2019, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

## II. RELEVANT HEARING TESTIMONY

### A. Plaintiff's Testimony

Plaintiff testified at the October 2018 administrative hearing. (R. at 36-44.) Plaintiff testified that he previously had a separate hearing that led to a denial by a separate ALJ in 2015, and he subsequently filed for disability beginning January 1, 2016. (R. at 37.) Plaintiff stated he has worked since January 1, 2016: first at a slaughterhouse, then at a food trailer, and then doing lawn care. (*Id.*) Plaintiff testified that he had not worked since spring 2017. (*Id.*) Plaintiff's counsel characterized Plaintiff's work in 2016 and 2017 as part time work for which he was paid "under the table," and Plaintiff testified that he probably only worked up to ten hours per week for those jobs. (R. at 38.)

When asked what had changed in his condition since his last denial in 2015, Plaintiff answered that his left ankle was worse, to the point that he now uses a cane and a brace. (R. at 38-39, 44.) Plaintiff testified that his left ankle hurt was in constant pain, even when he was sitting down, and that all he does during the day is go to physical therapy, take his medication, and try to find work. (R. at 39.) Plaintiff testified that there are no jobs that would accommodate his need to sit and stand periodically, and Plaintiff testified that he cannot carry objects or walk distances. (R. at 40.) Plaintiff testified that he uses a cane all of the time, he can sit for about 20 minutes before needing to stand up, and when he stands he tries to compensate on his right ankle to take pressure off his left ankle. (R. at 40-41.)

2

Plaintiff testified that he also has bone deterioration in his hips that affects his low back, and he sees a pain specialist for his hip. (R. at 41.) Plaintiff testified that he can lift almost ten pounds in his left hand, and he cannot lift more than ten pounds with both hands because he is always using a cane in one hand. (R. at 41-42.) Plaintiff testified that he has problems with crowds of more than four or five people, and although he did not treat with anyone for any type of emotional problems at the time, he did seek treatment in 2013. (R. at 42-43.) Plaintiff testified that he uses a brace for his left ankle, but it doesn't help, and he also has had injections and has been to physical therapy in addition to his pain specialist. (R. at 43.) Plaintiff testified that none of the forms of treatment had helped him. (*Id.*)

### B. Vocational Expert's Testimony

Mr. Michael Roscoe testified as the VE at the administrative hearing. (R. at 45-53.) Based on Plaintiff's age, education, and work experience and the residual functional capacity ultimately determined by the ALJ, the VE testified that a similarly situated hypothetical individual could perform bench work, including assembly, packaging, and sorting.[1] (R. at 49.)

## III. RELEVANT RECORD EVIDENCE

### A. Muskingum Valley Health Center

From February 25, 2014 to June 4, 2018, Plaintiff sought primary care and urgent care treatment for a variety of issues at Muskingum Valley Health Center. (R. at 353-391, 434-500.) On May 21, 2015, Beth Fineran, CRNP, reported that Plaintiff was seeking attention for shortness of breath related to cutting his grass. (R. at 364.) Nurse Fineran noted Plaintiff was wearing a brace on his left ankle and assessed him with hypertension. (R. at 364-365.) On

[1] The VE testified that there was a fourth kind of bench work, but it was inaudible and it was not transcribed. (R. at 49.) The ALJ's decision indicates that the VE testified that the fourth kind of bench work was product processing. (R. at 27.)

November 19, 2015, Plaintiff returned for treatment with Nurse Fineran complaining of headaches and chest pain.  (R. at 366.)  Plaintiff reported that he had shortness of breath for the previous couple of days, and he was not able to work on his food truck or mow grass as a result.  (*Id.*)  On January 7, 2016, Plaintiff reported to Amanda Warner, CRNP, that he was experiencing worsening right knee pain that he had experienced "for several years."  (R. at 371.)  Nurse Warner assessed right knee pain and right knee swelling.  (R. at 372.)  On September 21, 2016, Nurse Fineran, reported that Plaintiff was seen for a second opinion on his left ankle and right knee pain.  (R. at 357.)  Plaintiff was wearing a brace on his right knee and his left ankle, and he was using a cane to walk.  (R. at 358.)  Nurse Fineran assessed chronic right knee pain.  (*Id.*)

On May 23, 2017, Plaintiff reported to Nurse Fineran that his left ankle pain stemmed from an old injury which Plaintiff suffered in 1998 while he was incarcerated.  (R. at 439.)  On November 28, 2017, Plaintiff reported to Nurse Fineran that he had pain in his left side.  (R. at 459.)  Plaintiff was not able to remember if he had hurt himself from lifting anything heavy, "as he is always doing all kinds of things and cannot say for sure."  (*Id.*)  Nurse Fineran also reported that Plaintiff was experiencing right shoulder pain "that started 3 weeks ago after moving a refrigerator that landed on his right shoulder."  (*Id.*)

On June 16, 2017, Plaintiff reported to podiatrist David Skrobot, DPM, that he had experienced left ankle pain for four years.  (R. at 466.)  Dr. Skrobot assessed Plaintiff with bursitis of the left ankle, left foot pain, morbid obesity, and post-traumatic osteoarthritis of the left ankle.  (R. at 468-469.)  Plaintiff returned to Dr. Skrobot on June 30, 2017, and Dr. Skrobot also diagnosed osteochondral lesion of talar dome, in addition to the previous diagnoses.  (R. at 470-472.)  On August 4, 2017, Plaintiff returned to Dr. Skrobot, and Dr. Skrobot observed that

Plaintiff was using a cane and a brace for his left ankle.  (R. at 473.)  On September 15, 2017,

Plaintiff returned to Dr. Skrobot complaining of worsening left foot/ankle pain.  (R. at 476.)

**B.**     **Genesis Interventional Pain Management**

From January 18, 2016 to August 22, 2018, Plaintiff received treatment for a number of

conditions, including his right knee and left ankle pain, from Jason Cox, D.O., and Robert

Moore, M.D., at Genesis Interventional Pain Management.  (R. at 337-352, 405-433, 510-695

(B10F).)  At his first visit on January 18, 2016, Plaintiff complained of 10/10 right knee pain.

(R. at 342.)  Dr. Cox assessed Plaintiff with patellofemoral arthralgia of right knee, and a mass of

right knee, and Dr. Cox injected Plaintiff's right knee with depo-medrol.  (R. at 344-345.)  On

October 28, 2016, Plaintiff saw Dr. Cox complaining of left ankle pain which started when he

was playing sports in 2009.  (R. at 337.)  Dr. Cox noted that Plaintiff "wears a lace up ankle

brace on the left ankle for added support," and Dr. Cox assessed Plaintiff with primary

osteoarthritis of the left ankle and left ankle pain.  (R. at 337, 340.)  Plaintiff underwent an x-ray

of his left ankle, which revealed moderate degenerative joint disease.  (R. at 341.)

On December 29, 2016, Plaintiff saw Dr. Moore, complaining of left foot and ankle pain

that started "3 years ago."  (R. at 405, 559.)  Plaintiff stated that he had twisted his left ankle "a

few times" in the past, but now it just "rolls and 'pops.'"  (R. at 559.)  Dr. Moore diagnosed

Plaintiff with arthritis of left ankle, advised "the use of a[n] assistive device for ambulation," and

recommended a corticosteroid injection.  (R. at 409-410.)  Dr. Moore administered the injection

on February 8, 2017.  (R. at 410-411.)  On May 24, 2017, Plaintiff returned with left ankle pain,

reporting that the injection had helped for approximately 2-3 weeks.  (R. at 413.)  Dr. Moore

diagnosed Plaintiff with arthritis of left ankle, arthralgia of right knee, and arthralgia of hip,

right, and ordered x-rays of Plaintiff's right hip and knee.  (R. at 417-418.)  On July 12, 2017,

Plaintiff returned to Dr. Moore with continued right knee and hip pain. (R. at 418-419.) Tami Mohan, PA, reviewed x-rays of Plaintiff's right hip and knee which were taken May 26, 2017, and found that "his right knee x-ray is essentially normal." (R. at 422.) On July 18, 2017, Plaintiff underwent an MRI of his left ankle, which revealed severe chondromalacia and focal cartilage loss involving the medial aspect of the tibiotalar joint associated with subchondral cysts and edema like signal, which corresponded to a subchondral cyst involving the lateral aspect of the talus. (R. at 612.)

On August 17, 2017, Dr. Moore administered a corticosteroid injection to Plaintiff's right hip. (R. at 423-424.) Plaintiff also underwent an MRI which revealed an osteochondral lesion measuring 7x8mm in the lateral talar dome. (R. at 632.) On June 1, 2018, Plaintiff returned to Dr. Moore for follow-up. (R. at 426-432.) Plaintiff reported "mild improvement in his leg weakness," but that he had not seen significant reduction in pain. (R. at 427.) Dr. Moore referred Plaintiff to physical therapy and ordered an MRI of Plaintiff's lumbar spine. (R. at 431-432.) On July 20, 2018, Plaintiff presented for a lumbar evaluation, and noted that he cleans dog kennels and mows lawns with a push mower for work. (R. at 682-683.)

## C. Orthopaedic Associates of Zanesville

Plaintiff sought treatment from Orthopaedic Associates of Zanesville from January 9, 2015 to February 18, 2015. (R. at 301-330.) At his first appointment on January 9, 2015, Plaintiff reported right knee and left ankle pain, stating he had right knee pain for six or seven years, and Plaintiff stated his pain is aggravated with long term walking, standing, and stairs. (R. at 322.) At that appointment, Plaintiff underwent a right knee x-ray which revealed lateral subluxation of the patella and well-maintained joint spaces. (R. at 319.) On January 20, 2015, Plaintiff reported right knee pain. (R. at 312-314.) On January 22, 2015, Plaintiff stated that the

brace had been helping, but he had pain with prolonged walking. (R. at 306.) On February 18, 2015, Plaintiff reported right knee and left ankle pain, and he received a Kenalog injection into the left ankle joint. (R. at 302-303.) Plaintiff was given a left ankle brace "which []he may wear to work and with activities." (R. at 303.)

**D.      Floyd P. Sours, M.A.**

On September 1, 2016, Plaintiff saw psychologist Floyd P. Sours, M.A., for a Disability Assessment Report upon referral by the Opportunities for Ohioans with Disabilities for a clinical interview. (R. at 331-336.) Plaintiff reported getting panic attacks and suspected depression at times and said that he had attempted suicide at age 18. (R. at 331.) Plaintiff reviewed his knee and ankle injuries for Mr. Sours, who noted that Plaintiff "didn't have an ambulatory aid in the interview" despite reporting that he "can't walk far now, uses a cane, a walker and a knee brace at times."[2] (R. at 331-332.) Plaintiff reported that he gets anxious around people he doesn't know, and that he has unpredictable mood swings, racing thoughts associated with sleeplessness, and behavior problems. (R. at 333.) Plaintiff stated that he fears crowds, closed places, and heights, but his fear is not debilitating. (*Id.*) Mr. Sours recommended the following diagnoses: unspecified bipolar and related disorder; and panic disorder.

**E.      Charles M. Perry, DPM**

On September 27, 2017, Plaintiff saw Charles M. Perry, DPM, of Podiatric Medicine for treatment. (R. at 501-502.) Plaintiff reported ankle pain for the past four years. (R. at 501.) Dr. Perry observed that Plaintiff's gait was normal, and assessed Plaintiff with left ankle pain, arthritis of the left ankle, difficulty walking, and an unspecified fracture of left talus, sequela. (R. at 502.)

---

[2] Mr. Sours also observed that Plaintiff "was fully ambulatory." (R. at 333.)

**F.      OSU Wexner Medical Center**

On January 25, 2018 and February 15, 2018, Plaintiff visited the OSU Wexner Medical Center for diagnostic imaging.  (R. at 392-404.)  On January 25, 2018, an x-ray of Plaintiff's left ankle revealed moderate to severe osteoarthritic changes at the tibiotalar joint, and evidence of a remote medial and lateral collateral ligament injury.  (R. at 393.)  Plaintiff was assessed with an osteochondral lesion left talus with bipolar left ankle cystic changes.  (R. at 396.)

On February 15, 2018, a CT scan of Plaintiff's left ankle revealed a large remote osteochondral defect within the lateral talar dome with moderate to severe secondary osteoarthritic changes in the tibiotalar joint; intra-articular bodies; other secondary moderate to severe arthritic changes within the talofibular joint, tibiotalar joint and in the subtalar joint; intra-articular bodies in the middle facet of the subtalar joint; and old ligamentous injuries involving the ankle and hind foot.  (R. at 399-400.)  Plaintiff was assessed with left ankle arthritis with bipolar cystic changes.  (R. at 402.)

**G.      Judith Brown, M.D., C.I.M.E.**

On November 20, 2018, Judith Brown, M.D., C.I.M.E., provided a post-hearing orthopedic examination at the request of the Disability Determination Division of Opportunities for Ohioans with Disabilities.  (R. at 697-710)  Dr. Brown noted that Plaintiff's "major medical problems are the left ankle," which Plaintiff stated happened over time.  (R. at 697.)  Plaintiff reported that his ankle is stiff, "and he cannot push off and it feels like it will buckle if he does." (*Id.*)  Plaintiff also reported back pain for an unspecified period of time, which is intermittent and located in the mid-portion of the lower back and does not radiate into his legs.  (R. at 698.)

Dr. Brown noted that Plaintiff "can walk for 10 minutes before having to stop due to pain the left ankle," and Plaintiff does not know how many stairs he can climb.  (*Id.*)  Plaintiff

reported that he cannot alternate feet, and has to use a handrail, going up stairs.  Dr. Brown noted that "[h]e carries a cane which was recommended by an unspecified doctor."  (*Id.*)  However, Dr. Brown also observed that "[h]e is able to walk without the cane when asked to do so."  (R. at 699.)  Dr. Brown assessed Plaintiff with left ankle pain and intermittent back pain, and again noted that "[h]e carries a cane and he is able to walk without the cane when asked to do so."  (R. at 700.)  Dr. Brown concluded that Plaintiff's "ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying and traveling as well as pushing and pulling heavy objects appears to be at least mildly affected by the findings noted."  (*Id.*)

Dr. Brown also completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form for Plaintiff.  (R. at 705-710.)  On that form, Dr. Brown indicated that Plaintiff can never lift between 51 and 100 pounds, can frequently (1/3 to 2/3 of the time) lift 11 to 20 pounds, and can continuously (over 2/3 of the time) lift up to 10 pounds; can never carry between 21 to 100 pounds, and can frequently carry up to 20 pounds; can sit for up to 3 hours without interaction, stand for up to 20 minutes without interaction, and walk for up to 15 minutes without interaction; can sit for up to 7 hours in an 8 hour work day, can stand for up to 2 hours in an 8 hour work day, and can walk for up to 2 hours in an 8 hour work day.  (R. at 705-706.)  Dr. Brown indicated that Plaintiff does not require the use of a cane to ambulate.  (R. at 706.)  Dr. Brown noted that Plaintiff had no restrictions with his hands or right foot, but Plaintiff can never operate foot controls with his left foot.  (R. at 707.)  Dr. Brown indicated that Plaintiff can never climb stairs, ramps, ladders, or scaffolds, but can continuously stoop, kneel, crouch, and crawl.  (R. at 708.)  Dr. Brown also indicated that Plaintiff should never be exposed to unprotected heights, can frequently be exposed to moving mechanical parts, and otherwise had no environmental limitations.  (R. at 709.)

### H.    State Agency Consultants

State Agency consultant Michael Lehv, M.D., reviewed Plaintiff's file on June 13, 2016, and provided assessments of Plaintiff's physical residual functional capacity.  (R. at 107-124.) Specifically, Dr. Lehv found that Plaintiff could occasionally lift and/or carry up to 20 pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk (with normal breaks) for a total of about four hours; sit (with normal breaks) for about six hours in an eight-hour workday; was limited in pushing or pulling with his lower right extremity; was occasionally limited in climbing ramps/stairs, stooping (i.e., bending at the waist), kneeling, crouching (i.e., bending at the knees), and crawling; was frequently limited in balancing; had no other postural, manipulative, visual, or communicative limitations; and had some environmental limitations, as he should avoid concentrated exposure to fumes, odors, dusts, gases, or poor ventilation, and should avoid all exposure to hazards such as machinery and heights.  (R. at 117-119.)  Dr. Lehv also found that Plaintiff had mild restrictions in his activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation.  (R. at 115.)

Dr. Lehv reviewed Mr. Sours' opinion, giving it "other weight" because the prior file established that limits "would be a little more than none to mild."  (R. at 117.)  Dr. Lehv also reviewed a Mental Residual Functional Capacity Assessment provided by Sandra Banks, Ph.D. (R. at 119-121.)  Dr. Banks found that Plaintiff is moderately limited in the ability to understand and remember detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and the ability to respond appropriately to

10

changes in the work setting. (*Id.*) Dr. Lehv ultimately concluded that Plaintiff was not disabled, with the following explanation:

> You said you were disabled due to Bad Knees and Ankles, Sleep Apnea, High Blood Pressure and a Learning Disability. Medical evidence shows your condition does not prevent all work activity. Physically, while you would be precluded from heavy, strenuous labor, you retain the capacity for more sedentary types of activities. Psychologically, you are able to understand, remember and carry out routine tasks. Your attention and concentration are adequate for simple tasks as well. We do not have sufficient vocational information to determine whether you can perform any of your past relevant work. However, based on the evidence in file, we have determined that you can adjust to other work.

(R. at 124.)

State Agency consultant Anne Prosperi, D.O., reviewed Plaintiff's file at the reconsideration level on February 13, 2017, and agreed with most of Dr. Lehv's above assessments. (R. at 126-142.) Dr. Prosperi reviewed Mr. Sours' opinion, adopting Dr. Lehv's analysis, and Dr. Prosperi also reviewed the Mental Residual Functional Capacity Assessment provided by Dr. Banks, again adopting Dr. Lehv's analysis. (R. at 135, 137-139.) Dr. Prosperi also concluded that Plaintiff was "Not Disabled," and provided following explanation:

> You said you are disabled due to bad knees and ankles, sleep apnea, hypertension and a learning disorder. We took another look at your claim and we determined that the first decision was correct. The medical evidence shows that you are restricted in your ability to stand and walk for long periods of time. You retain normal use of both arms and hands to perform work-related abilities that are sedentary in nature. Your hypertension and sleep apnea do not restrict your overall level of functioning beyond sedentary work. The medical evidence suggests that you also exhibit symptoms of depression and personality disorder that interferes with your ability to deal with stressful situations and interact adequately with others. Testing shows that you are functioning within the borderline range of intelligence. While you may be restricted in your ability to carry out complex tasks, you are still able to understand, remember and carry out simple routine tasks. You would function best in a work setting where close interactions with others is not required. We do not have sufficient vocational information to determine whether you can perform any of your past relevant work. However, based on the evidence in file, we have determined that you can adjust to other work.

(R. at 141-142.)

## IV.  ADMINISTRATIVE DECISION

On February 6, 2019, the ALJ issued his decision.  (R. at 20-33.)  At step one of the

sequential evaluation process,[3] the ALJ found that Plaintiff has not engaged in any disqualifying

substantial gainful activity since June 6, 2015.  (R. at 18.)  The ALJ noted that Plaintiff testified

he worked "under the table" since June 6, 2015, but the ALJ concluded that "[b]ecause of the

nature of these earning[s] being 'under the table,' the undersigned is not able to determine

whether or not they would rise to the level of substantial gainful activity."  (*Id.*)  At step two, the

ALJ found that Plaintiff has the following severe impairments:  major joint dysfunction, back

disorder, obesity and depressive disorder.  (*Id.*)

Next, the ALJ found that Plaintiff did not have an impairment or combination of

impairments that meets or medically equals the severity of listings 1.02, 1.04, 3.10, 12.02, 12.04,

12.06, or any other listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (*Id.*)  Among

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.  Is the claimant engaged in substantial gainful activity?
2.  Does the claimant suffer from one or more severe impairments?
3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.  Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

other findings, the ALJ specifically found that Plaintiff did not meet the findings of listing

1.02A:

> The Undersigned finds that the claimant's major joint dysfunction does not support the required medical findings of listing 1.02A, such as gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joints and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction or ankylosis of the affected joints with [] involvement of one major peripheral weight-bearing joint []involving the hip, knee[,] or ankle, resulting in the inability to ambulate effectively as required by listing 1.02A. Despite [Plaintiff's] testimony that he requires a cane to ambulate, during his consultative evaluation on November 20, 2018, [Plaintiff] reported he carries a cane but he was able to ambulate or walk without a cane when asked to do so.

(*Id.* (internal citations omitted).)

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional

capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work where he is able to lift up to 20 pounds occasionally and 10 pounds frequently as defined in 20 CFR 416.967(b) except sit/stand option alternating every 15 to 30 minutes; occasionally using his right foot for foot controls; postural activities, such as bending, stooping, crouching, crawling and the like should be performed on an occasional basis; avoid climbing ladders, ropes and scaffolds; he needs a cane for walking purposes; and work should be limited to simple, routine, and repetitive tasks.

(R. at 21.) The ALJ found that "[a]s for [Plaintiff's] statements about the intensity, persistence,

and limiting effects of his symptoms, they are inconsistent because there are no objective test

results and no report from any treating provider that precludes or prevents [Plaintiff] from

performing work at the light exertional level." (R. at 24.)

The ALJ also considered various opinion evidence. (R. at 24-26.) First, the ALJ

considered the opinions of State agency medical consultant Dr. Lehv, affording Dr. Lehv's

opinion "some weight" because "Dr. Lehv did not have an opportunity to consider hearing level

evidence or testimony supporting additional limitations." (R. at 24.) Next, the ALJ considered

13

the opinion of mental consulting psychologist Floyd Sours, M.A., assigning "some weight" to

Mr. Sours' "mild limitations in terms of [Plaintiff's] ability to interact with supervisor[s] and co-

workers in a work setting," and "no weight" to the balance of Mr. Sours' opinion, because Mr.

Sours' findings "do not take into account the hearing level evidence or [Plaintiff's] testimony."

(*Id.*)  The ALJ also considered the opinion of State agency psychological consultants Drs. Banks

and Delcour, affording "some weight" as to their opinion regarding the "mild limitations in

difficulties in maintaining social functioning and moderate difficulties in maintaining

concentration, persistence or pace," and affording "no weight" to the balance of their opinion.

(R. at 24-25.)  Finally, the ALJ assigned "some weight" to the opinion of post-hearing

consultative examiner Dr. Brown, generally agreeing with Dr. Brown that Plaintiff "retains the

residual functional capacity for a reduced range of light work exertionally," but disagreeing with

Dr. Brown's assessment "about [Plaintiff's] ability to sit for 20 minutes and then stand and his

need for a cane for walking."  (R. at 25-26.)

Finally, relying on testimony from the VE, the ALJ found that considering Plaintiff's

age, education, work experience, and RFC, he can perform jobs that exist in significant numbers

in the national economy.  (R. at 26-27.)  He therefore concluded that Plaintiff was not disabled

under the Social Security Act.  (R. at 28.)

### V.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. §

405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.  ANALYSIS

Plaintiff puts forth one assignment of error, arguing that "[t]he ALJ committed an error upon deciding that [Plaintiff] does not have a disability that meets or exceeds the standards outlined in the Social Security Listing of § 1.02A."  (ECF No. 8 at PAGEID # 754.) Specifically, Plaintiff argues that "[t]he ALJ did not properly rely on the evidence provided in [Plaintiff's] medical records, as the limitations necessary to be qualified as disabled under the

Listing § 1.02A are present in the record," and "the ALJ did not provide an explained conclusion that was supported by substantive evidence." (*Id.* at PAGEID # 755.) Plaintiff argues that the record contains evidence of each requirement in listing 1.02A, including: gross anatomical deformity; chronic pain and stiffness with limited range of motion; and medical imaging of joint space narrowing, bony destruction, or ankylosis. (*Id.* at PAGEID ## 757-759.) Plaintiff also argues that the ALJ should have reviewed Paragraph A of the listing, which includes the "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively[.]" (*Id.* at PAGEID # 759.) Plaintiff argues that "it is evident that [Plaintiff] cannot effectively ambulate," despite the ALJ's suggestion that Plaintiff does not need a cane. (*Id.* at PAGEID ## 759-762.)

The Commissioner responds that Plaintiff bears the burden of showing his impairments meet or equal a listed impairment, but Plaintiff has failed to meet that burden. (ECF No. 11 at PAGEID ## 770-776.) The Commissioner argues that the ALJ's finding that Plaintiff did not meet listing 1.02A was supported by substantial evidence because Plaintiff only showed some, but not all, of the diagnostic requirements from the first part of listing 1.02A. (*Id.* at PAGEID # 772.) Specifically, the Commissioner contends that Plaintiff did not show that he had "gross anatomical deformity" in his ankle; Plaintiff's doctors' reports of diagnostic imaging "consistently stated that they had revealed no fracture, dislocation, or other acute findings"; none of Plaintiff's doctors used the terms "subluxation," "contracture," "ankyloses," or "instability," and Plaintiff did not cite any instances of the same in his Statement of Errors. (*Id.*) The Commissioner further maintains that even if Plaintiff met the diagnostic portion of the listing, "he did not meet the second, functional part of the listing," and that the ALJ correctly found that Plaintiff did not have an "inability to ambulate effectively." (*Id.* at PAGEID # 773.) The

16

Commissioner asserts that there was substantial evidence supporting this finding.  (*Id.* at

PAGEID ## 773-776.)

Thus, Plaintiff maintains that the ALJ erred in assessing whether Plaintiff meets listing

1.02A. To satisfy this listing, Plaintiff must have an impairment as follows:

> **1.02** *Major dysfunction of a joint(s) (due to any cause)***: Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitations of motion or other abnormal motion to the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:**

> **A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle) resulting in inability to ambulate effectively, as defined in 1.00B2b;**

> or

> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand) resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.02 (emphasis added). The regulations describe a

claimant's "inability to ambulate effectively" as follows:

> Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 CFR § Pt. 404, Subpt. P, App. 1 § 1.00B(2)(b)(1). The regulations further provide:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's

17

home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 CFR § Pt. 404, Subpt. P, App. 1 § 1.00B(2)(b)(2).  Additionally, the evidence must show that Plaintiff's impairment "has lasted or can be expected to last for a continuous period of 12 months."  20 C.F.R. § 404.1525(c)(4).  Plaintiff has the burden of proving that she meets or equals all of the criteria of a listed impairment.  *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) ("Plaintiff had the burden of showing that his impairments were equal or equivalent to a listed impairment."); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391 (6th Cir. 1999) (clarifying that the burden of proving disability remains with the Social Security claimant at Steps 1 through 4 and does not shift to the ALJ until Step 5).  A decision that a claimant meets a listed impairment "must be based solely on medical evidence supported by acceptable clinical and diagnostic techniques."  *Land v. Sec'y of H.H.S.*, 814 F.2d 241, 245 (6th Cir. 1986).  In determining whether a claimant satisfies the requirements of a listing, the ALJ must "actually evaluate the evidence, compare it to Section [1.02] of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence."  *Reynolds v. Comm'r of Soc. Sec.,* 424 F. App'x 411, 415–16 (6th Cir. 2011).

Here, the ALJ determined that Plaintiff does not meet listings 1.02, 1.04, 3.10, 12.02, 12.04, 12.06, or any other listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (R. at 18.)  Plaintiff, however, only challenges the ALJ's finding regarding listing 1.02A.[4]  (ECF No. 8 at PAGEID ## 754-762.)  The ALJ's analysis of the application of listing 1.02A is below:

---

[4] The Commissioner also suggests that "Plaintiff briefly argues that he meets the upper extremity criteria of the listing, from § 1.02B."  (ECF No. 11 at PAGEID # 775.)  The Court does not read Plaintiff's Statement of Specific Errors this way.  Regardless, to the extent Plaintiff implicitly raises this argument, it is meritless.  Plaintiff fails to provide any argument, let alone evidence in

> [Plaintiff's] representative argued [Plaintiff's] "osteoarthrosis and osteoarthritis should be evaluated under Listing l.02A as evidenced by medical imaging" but then cites to nothing in the record to support his listing argument. The undersigned finds [Plaintiff's] major joint dysfunction does not support the required medical findings of listing 1.02A, such as gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joints and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction or ankylosis of the affected joints with involvement of one major peripheral weight-bearing joint (involving the hip, knee; or ankle) resulting in the inability to ambulate effectively as required by listing 1.02A.

(*Id.* (internal citations omitted).)  The Undersigned finds no error in the ALJ's analysis and concludes that it is supported by substantial evidence.

The first step of the subject 1.02 analysis here is whether Plaintiff had "gross anatomical deformity" in his right knee, right hip, or left ankle, which required Plaintiff to show he had "subluxation, contracture, bony or fibrous ankyloses, [or] instability." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.02.  In his Statement of Specific Errors, Plaintiff cited medical records that indicated he had "pain," "limited movement," "arthralgia," "swelling," "edema . . . where there appeared to be a cyst," "chronic pain," and a "mass" on his right knee.  (ECF No. 8 at PAGEID # 757.)  Plaintiff also cited medical records that indicated that he had "pain" and "arthralgia," and had received a corticosteroid injection, in his right hip.  (*Id.*)  Plaintiff does not demonstrate how he had "gross anatomical deformity" with regard to his left ankle.  (*Id.*)

The Undersigned finds that Plaintiff has failed to meet his burden at the first step of the analysis and that the ALJ's decision is supported by substantial evidence.  As the Commissioner

---

support, that he satisfies any or all of the diagnostic or functional requirements of the listing for his left or right shoulder.  (*See generally* ECF No. 8.)  Nor does Plaintiff suggest or argue that listing 1.02B was even at issue.  (*Id.*)  Rather, Plaintiff merely submits that "there are persistent medical limitations present dealing with [his] shoulders," that "Dr. Cox diagnosed degenerative joint disease in the shoulder by joint space narrowing," and that Nurse Fineran "recorded right shoulder pain and an inability to extend his right arm above the shoulder" on November 28, 2017.  (*Id.* at PAGEID ## 757, 760.)  Accordingly, the Court will not analyze whether Plaintiff meets any of the diagnostic or functional requirements of listing 1.02B for his shoulder.

correctly points out, as it relates to Plaintiff's left ankle and right hip, "Plaintiff's brief does not cite to ***any*** instances of subluxation, contracture, ankyloses, or instability from his medical reports." (ECF No. 11 at PAGEID # 772 (emphasis added).) As for plaintiff's left ankle and right hip, the ALJ appropriately cited imaging showing Plaintiff did not meet any of those criteria. In fact, Plaintiff's doctors' reports consistently found that the imaging had revealed no fracture, dislocation, or other acute findings. (R. at 318, 340-41, 393, 397, 400, 409, 417, 485, 503, 505, 507-508, 538, 564, 588.) The Undersigned also finds that Plaintiff's suggestion that "[w]hen arthritis arises, abnormal stiffening of joints is a ***plausible effect***, i.e. ankylosis," is a non-starter. (ECF No. 8 at PAGEID # 759.) The Court cannot look for Plaintiff's opinion of what is plausible. It looks to whether the ALJ's decision is supported by medical evidence, created by acceptable clinical and diagnostic techniques. Here, the Undersigned concludes that it is, and Plaintiff has provided none to counter the ALJ's conclusions as it relates to his left ankle or right hip. *Land*, 814 F.2d at 245 ("This decision must be based solely on medical evidence supported by acceptable clinical and diagnostic techniques.") (citing 20 C.F.R. § 404.1526(b)).

As for Plaintiff's right knee, the Commissioner does not dispute that the ALJ identified a 2015 x-ray that showed subluxation in the patella. (ECF No. 11 at PAGEID # 775 (citing R. at 319.).) However, the Commissioner is correct that even though this satisfies the first diagnostic requirement for the listing as to Plaintiff's right knee, Plaintiff has failed to satisfy the other diagnostic requirements for his right knee. The same x-ray also showed that Plaintiff still had "[w]ell-maintained joint spaces" and there were no other findings consistent with bony destruction or ankyloses. (*Id.*) Accordingly, Plaintiff, who has the burden, has failed to show how he satisfies all of the diagnostic requirements for his left ankle, right knee, or right hip.

Even assuming, *arguendo*, that Plaintiff had satisfied all four of the diagnostic

requirements of the listing for his left ankle, right knee, or right hip (which, as discussed, the Undersigned finds he did not), Plaintiff still would then have to satisfy the functional requirements of the listing as well.  20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.00(B)(2)(b); 1.02A. To this end, Plaintiff argues that "[w]ith the notable issues in the left ankle and knee, it is evident that Mr. Holbert cannot effectively ambulate according to Listing § 1.00B2b2."  (ECF No. 8 at PAGEID # 760.)  In support, Plaintiff cites "notable and evident limitations charted by the differences between his [] normal ranges of motion in the left ankle," as well as Dr. Brown's opinion that Plaintiff would not be able to walk a block at a reasonable pace while undergoing rough or uneven surfaces.  (*Id.*)

Plaintiff's argument again falls short.  Despite his assertion that he has "notable evident limitations" with regard to ambulation, Plaintiff fails to cite to any medical evidence that meets the specific criteria of the listing.  This failure is dispositive.  *Thacker v. Social Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) ("When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency.") (citing *Evans v. Sec'y of H.H.S.*, 820 F.2d 161, 164 (6th Cir. 1987)).

Plaintiff's failure to come forward with medical findings or evidence demonstrating equivalency completely undermines his claim, especially in light of the overwhelming evidence cited by the ALJ.  As noted by the Commissioner, the ALJ specifically cited Plaintiff's treatment records that "showed he had a limping gait and that he used a cane at times, but ***no doctor*** reported Plaintiff needed two canes or a walker," which is part of the listing.  (ECF No. 11 at PAGEID # 773 (citing R. at 396 (noting "antalgic gait favoring the affected extremity" but not

mentioning use of any cane), 402 (same), 533 (noting "intact" gait), 683 (Plaintiff "cleans dog

kennels and mows lawns (with push mower)," with "an[t]algic[] gait noted (patient comments he

is supposed to be using a cane but does not like to)"), 699 (Plaintiff "ambulates with an antalgic

gait" and Plaintiff "is able to walk without the cane when asked to do so").).  The ALJ also cited

Plaintiff's testimony that he had worked "under the table" in 2016-2017, which "suggest[s] he

had sufficient mobility to perform his daily activities, and get to and from work," two of the

indicators of effective ambulation.  (*See* ECF No. 11 at PAGEID ## 773-774 (citing 20 C.F.R.

Pt. 404, Subpt P, App. 1, § 1.00B2b(2) ("To ambulate effectively, individuals must be capable of

sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities

of daily living[,]" and they must "have the ability to travel without companion assistance to and

from a place of employment.").  Additionally, while Plaintiff cited Dr. Brown's opinion, Plaintiff

omitted Dr. Brown's multiple observations that Plaintiff was "able to ambulate or walk without a

cane when asked to do so."  (R. at 699-700.)

      To that end, Plaintiff implies that his use of a cane demonstrates his inability to ambulate

effectively.  (ECF No. 8 at PAGEID # 761.)  The Undersigned does  not find this assertion

persuasive.  As this Court has recognized, the "use of a single cane does not establish that [a]

plaintiff is unable to ambulate effectively for purposes of meeting or medically equaling Listing

1.02(A)."  *Rainey-Stiggers v. Comm'r of Soc. Sec.*, No. 1:13-cv-517, 2015 WL 430193, at * 5

(S.D. Ohio Feb. 2, 2015); *see also* 20 C.F.R. Pt. 404, Subpt P, App. 1, § 1.00(B)(2)(b)(1), (2)

(ineffective ambulation is found where a claimant's use of a hand-held assistive device limits the

functioning of *both* upper extremities, such as requiring a walker or two canes to walk).

"Plaintiff's use of a single cane does not satisfy the listing's requirement."  *Id.*; *see also Krieger

v. Comm'r of Soc. Sec.*, No. 2:18-CV-876, 2019 WL 1146356, at *7 (S.D. Ohio Mar. 13, 2019),

*report and recommendation adopted*, No. 2:18-CV-876, 2019 WL 3955407 (S.D. Ohio Aug. 22, 2019) ("This Court has held that a claimant does not meet the Listing's requirement of an inability to ambulate effectively by virtue of having a cane.  It follows that use of a cane is likewise insufficient to equal the Listing.") (citing *Rainey-Stiggers*).  Plaintiff therefore has failed to demonstrate an inability to ambulate effectively as contemplated in listing 1.02A.  Accordingly, Plaintiff has not met his burden of showing that he satisfied either the functional or diagnostic requirements of listing 1.02A.

For these reasons, it is **RECOMMENDED** that Plaintiff's contention of error be **OVERRULED**, and the Commissioner's decision be **AFFIRMED**.

### VII.  CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Based on the foregoing, it is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

### PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex*

*Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**Date: January 28, 2021**                          */s/ Elizabeth A. Preston Deavers*
                                                              **ELIZABETH A. PRESTON DEAVERS**
                                                              **UNITED STATES MAGISTRATE JUDGE**